IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC - 3 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| NATALIO ORTEGA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-06-199 |
| | § | |
| HOUSING AUTHORITY OF THE CITY OF | § | |
| BROWNSVILLE, | § | |
| | § | |
| Defendant. | § | |

## OPINION & ORDER

BE IT REMEMBERED that on January _2_, 2008, the Court **GRANTED** Defendant's Unopposed Motion to Extend Deadline to File Dispositive Motions, Dkt. No. 24. The Court therefore considered Plaintiff's Motion for Summary Judgment on the Issue of Liability, Dkt. No. 19, Defendant's Response to Plaintiff's Motion for Summary Judgment, Dkt. No. 26, as well as Defendant's Motion for Summary Judgment, Dkt. No. 25, Plaintiff's Combined Response to Defendant's Motion for Summary Judgment and Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment, Dkt. No. 27, and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. No. 28. The Court **GRANTED in part** Plaintiff's requested Declaratory and Injunctive Relief and **GRANTED in part** Defendant's Motion for Summary Judgment based on the affirmative defense of statute of limitations.

## I.    Factual Background

In June 2001, Plaintiff, Natalio Ortega, applied for a Section 8 housing voucher for himself, his wife, his daughter, and his grandson with Defendant, the Brownsville Housing Authority.  Dkt. No. 19, at 10; Dkt. No. 19, Depo. Ex. 2.  Defendant placed Plaintiff's

1

application on the waiting list. Dkt. No. 19, at 11. Three years later, on July 19, 2004, Defendant reached Plaintiff's application and issued Plaintiff a voucher, valid until September 19, 2004, for a two-bedroom apartment. *Id.*; Dkt. No. 19, Depo. Ex. 13. Within those sixty days, Plaintiff had to find a reasonable apartment and secure Defendant's approval in order to receive housing assistance for the year. Dkt. No. 19, at 13-14. The voucher explained that "this voucher will expire on the date stated . . . unless the family requests an extension in writing and the PHA grants a written extension of the voucher." Dkt. No. 19, Depo. Ex. 13 at 2.

In August 2004, Plaintiff submitted a request for tenancy approval on an apartment. Dkt. No. 19, Tab 2 at 3. That same month, Defendant's employee, Arnulfo Martinez Jr., told Plaintiff that Defendant would not sign a contract with Plaintiff's landlord until Plaintiff obtained court-ordered guardianship of Plaintiff's grandson. *Id.* Plaintiff did not obtain court-ordered guardianship over his grandson. *Id.* On September 19, 2004, Plaintiff's voucher expired. Dkt. No. 19, Depo. Ex. 13. The voucher expired because Defendant did not enter a housing contract with Plaintiff's landlord because Plaintiff did not comply with Defendant's policy which required legal guardianship of minors living in the home. Dkt. No. 19, at 11. As the voucher expired, Plaintiff did not receive year-long housing assistance. Dkt. No. 19, Depo. Ex. 13. On December 21, 2004, Defendant mailed Plaintiff a letter notifying Plaintiff that his voucher had expired and, because Plaintiff had not contacted Defendant, Defendant canceled Plaintiff's application. Dkt. No. 19, Tab 2 at 3; Dkt. No. 19, Depo. Ex. 19. After cancellation, Plaintiff was no longer entitled to Defendant's assistance. *See* Dkt. No. 19, Tab 4 at 71.

Prior to the voucher's expiration date, Plaintiff provided Defendant with a document purporting to give Plaintiff's wife parental consent to have custody of their grandson. Dkt. No. 19, Depo. Ex. 6 at 1; Dkt. No. 19, Tab 2 at 2-3. Then, in January, 2005, Plaintiff requested that Defendant reinstate his voucher and accept a new document which purported to give Plaintiff power of attorney for his grandson in lieu of the court-ordered letters of guardianship. Dkt. No. 19, Depo. Ex. 20 at 1; Dkt. No. 19, Tab 2 at 4. Defendant refused and explained that a power of attorney did not satisfy Defendant's legal guardianship requirement. Dkt. No. 19, Tab 2 at 4.

2

In May 2006, Plaintiff reapplied for a housing voucher. Dkt. No. 19, Tab 2 at 4. In October 2006, Defendant reached Plaintiff's application but this time did not issue him a voucher. *Id.* Rather, Defendant classified Plaintiff's application as pending and granted Plaintiff more time to obtain legal guardianship over Plaintiff's grandson. *Id.*[1]

Plaintiff filed suit against Defendant in December 2006 alleging that the legal guardianship requirement violated the Fair Housing Act and constituted unlawful discrimination based on familial status in violation of federal statutes defining families, Defendant wrongfully denied Plaintiff housing assistance when Defendant failed to provide notice and opportunity for a hearing, and Defendant violated Plaintiff's procedural due process rights. Dkt. No. 1, at 8-10. Plaintiff also requested declaratory and injunctive relief regarding Defendant's legal guardianship requirement. *Id.* at 10-11.

## II.    Summary Judgment: Statute of Limitations

Plaintiff alleged causes of action against Defendant based on Defendant's legal guardianship requirement and violation of Plaintiff's due process rights. *See* Dkt. No. 1, at 8-10. However, Plaintiff moved for summary judgment on only the legal guardianship requirement claims. *See* Dkt. No. 19, at 15-25. Similarly, Defendant only moved for summary judgment on the legal guardianship requirement issue. *See* Dkt. No. 25, at 4-6. Both parties addressed the statute of limitations affirmative defense before this Court. Dkt. Nos. 19, at 25-26; 25, at 3.

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744,

---

[1] While this information is mentioned in subsequent filings, see Dkt. No. 19, at 9, 12-13, 26, Plaintiff only reported in the complaint that he was still on the waiting list. Dkt. No. 1, at 7 ("Plaintiff simply reapplied for the housing voucher program on May 24, 2006 and remains on the waiting list."). Plaintiff failed to allege this second event even though Plaintiff filed the complaint in December 2006 after Defendant had reached Plaintiff on the waiting list and yet failed to issue him a voucher. Dkt. No. 19, Tab 2 at 4; Dkt. No. 1, at 8.

3

752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). The Court must view all evidence in a light most favorable to the non-moving party. Piazza's Seafood World, LLC, 448 F.3d at 752; Lockett, 337 F. Supp. 2d at 891. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. Lockett, 337 F. Supp. 2d at 891. The nonmovant may not merely rely on conclusory allegations or the pleadings. Id. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); Piazza's Seafood World, LLC, 448 F.3d at 752; Lockett, 337 F. Supp. 2d at 891.

The statute of limitations period for Plaintiff's claims under the Fair Housing Act, ("FHA"), and 42 U.S.C. § 1983 is two years. 42 U.S.C. § 3613(a)(1)(A) (West 2003). See Hatchet v. Nettles, 201 F.3d 651, 653 (5th Cir. 2000) (applying Texas' two-year personal injury statute of limitations for 42 U.S.C. § 1983 actions). Section 3613(a)(1)(A) of the FHA requires that a plaintiff bring suit within 2 years of "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).

The issue before this Court is not the length of the statute of limitations for the claims, but rather when the time began to run. Dkt. No. 14, at 3; Dkt. No. 19, at 25. Defendant argues that the two year statute of limitations began on September 19, 2004, Dkt. No. 14, at 3, or on August 17, 2004, Dkt. No. 25, at 3; Dkt. No. 26, at 5. Plaintiff argues that the time began to run on December 21, 2004. Dkt. No. 19, at 25. In the alternative, Plaintiff argues that Defendant's continued policy of requiring legal guardianship injured Plaintiff again in 2006 and thus the time period was tolled for two years by the doctrine of continued violations. Id. at 26.

While Defendant bears the initial burden of proof that the suit is time barred, where Defendant demonstrates that the suit is time barred, the burden switches to Plaintiff to disprove the allegation. See Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (A party moving for summary judgment on an affirmative defense "must establish beyond peradventure all of the essential elements" of that defense.) (emphasis in original); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). Plaintiff alleges Defendant has not met its burden and has made only conclusory statements. Dkt. No. 27, at 4-5. However,

4

Defendant has sufficiently articulated undisputed facts which could support a statute of limitations bar to this suit. *See* Dkt. No. 14, at 3 (indicating Plaintiff lost the sixty-day housing voucher in September 2004); Dkt. No. 25, at 3 (stating that in August 2004 Defendant informed Plaintiff that if he did not comply with the legal guardianship requirement for minors he would not receive housing assistance); Dkt. No. 28, at 2 (specifying that on August 9, 2004 Defendant notified Plaintiff that the legal guardianship requirement would bar housing assistance for Plaintiff if he did not obtain legal guardianship for his grandson and directly referring to an exhibit Plaintiff filed with the Court). Plaintiff concedes that prior to the cancellation of the housing assistance application, Defendant took action against Plaintiff based on their legal guardianship policy and that Defendant refused to "enter into a housing assistance payments contract with the landlord because of its policy." Dkt. No. 19, at 11. Plaintiff does not seem to concede the dates of events that happened prior to December 2004; however, he provided evidence which supports Defendant's factual assertions. *See, e.g.*, Dkt. No. 19, Depo. Ex. 13. Plaintiff filed a motion for summary judgment before Defendant and attached documentation relevant to the statute of limitations affirmative defense. Dkt. No. 19. Given the factual assertions made by Defendant as well as the evidence before this Court, there is sufficient evidence before this Court to consider the affirmative defense.

### A. Commencement of the Statute of Limitations

"Under federal law, the [time] begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" Russell v. Bd. of Trustees, 968 F.2d 489, 493 (5th Cir. 1992) (quoting Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987)). Plaintiff need only be aware of an injury and some connection between Defendant's actions and Plaintiff's injury. Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995). The time period for the statute of limitations begins to run when Plaintiff has actual knowledge, or through due diligence would have obtained actual knowledge, of Plaintiff's injury and Defendant's connection. *Id.* (citing Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988)). Generally, when a plaintiff has a

cause of action, the limitations period begins. Graham Co. Soil & Water Conservation Dist. v. U.S., 545 U.S. 409, 419 (2005).

Absent case law directly applicable to these circumstances, the Court analogizes the situation to an employment discrimination suit. The Supreme Court case, *Dela. State College v. Ricks*, 449 U.S. 250 (1980), is persuasive. In *Ricks*, the employee alleged that he was denied tenure in violation of Title VII. 449 U.S. at 252. The employer informed the employee that he had been denied tenure, offered him a one-year term employment contract, denied his grievance about the tenure denial, and after a year did not renew his contract. *Id.* The employee argued and the Third Circuit agreed that the statute of limitations did not begin to run until the end of plaintiff's one-year term employment contract. *Id.* at 255-56. The Supreme Court reversed and rejected the rationale that the discrimination was not final where it was possible that the initial employment decision to terminate could be reversed. *Id.* "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257. Termination simply delayed the inevitable consequence. *Id.* at 257-58. "The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become the most painful." *Id.* (emphasis in *Ricks*) (quoting Abramson v. Univ. of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979)).

The Equal Employment Opportunity Commission, ("EEOC"), argued that the statute of limitations did not start to run until the employer denied employee's grievance as that demonstrated the finality of the employer's intent to act. *Ricks*, 449 U.S. at 260. The Court rejected that argument and reasoned that a grievance procedure did not change a decision before it was made but rather remedied a decision. *Id.* at 161. The Supreme Court held that the statute of limitations began when the employee knew that he would not receive tenure but would receive only a term contract for the following school year. *Id.* at 161-62.

As in *Ricks*, Defendant notified Plaintiff of a policy effecting Plaintiff's housing assistance, denied Plaintiff assistance in the form of a year-long voucher, and then canceled Plaintiff's application. *See* Dkt. No. 19, at 11; Dkt. No. 19, Depo. Ex. 19. In this case, the alleged discriminatory act was when Defendant allowed Plaintiff's sixty-day voucher to lapse without granting housing assistance for the year because Plaintiff did not

6

have legal guardianship of his grandson. The later cancellation of Plaintiff's application was a consequence of the initial discriminatory act.

Plaintiff knew when the voucher expired, or with due diligence would have known, that he had a cause of action. As in *Ricks* and the notification of the tenure decision, the fact that Defendant informed Plaintiff of the legal guardianship policy did not commence the running of the statute of limitations. Moreover, as in *Ricks*, mere continuity of a housing assistance application does not toll the statute of limitations. Although Plaintiff may have had a better chance of getting another voucher if his application was active, the statute of limitations nonetheless began when Defendant made the decision not to sign the rental contract and Defendant thereby failed to grant Plaintiff housing assistance for the year. When Plaintiff's voucher expired on September 19, 2004 because he had not obtained legal guardianship of his grandson, he had a cause of action and the statute of limitations began.

Thus, the statute of limitations began on September 19, 2004 for those claims related to Defendant's policy of requiring legal guardianship. As such, the discrimination claims are time barred,[2] as are the due process claims that relate to the expiration of the sixty-day voucher.[3] However, the due process claims arising from cancellation of Plaintiff's housing application are not time barred as those alleged violations occurred on December 21, 2004 and thus the filing of suit on December 15, 2006 was within the statute of limitations. The Court will not discuss these due process claims further, as aside from the

---

[2] In Plaintiff's motion for summary judgment, Plaintiff asserted that he has a "second claim" of discrimination based on Defendant's failure to issue a voucher in October 2006 because Plaintiff did not have legal guardianship of his grandson. Dkt. No. 19, at 26. However, Plaintiff did not allege those facts in the complaint he filed on December 15, 2006. Dkt. No. 1. In the complaint, Plaintiff simply mentioned that he remained on the waiting list. *Id.*

[3] In the complaint, Plaintiff alleged due process violations in claims three and four. Dkt. No. 1, at 9-10. However, Plaintiff did not clearly indicate whether those allegations derived from the expiration of the 2004 voucher or the cancellation of the application in December. *See id.* at 9 ("denials of participation in the Section 8 Housing Choice Voucher Program"), *id.* at 10 ("denying . . . section 8 housing voucher assistance").

affirmative defense, they were not mentioned or implicated in the motions for summary judgment. Dkt. Nos. 19, 25.

### B. Continued Violation

In the alternative, Plaintiff contends that the statute of limitations did not begin until 2006. Plaintiff asserts that because Defendant maintained the same policy of requiring legal guardianship for minors and subsequently in 2006 Plaintiff was again denied a voucher, Defendant's conduct constituted a continued violation. Dkt. No. 19, at 26. The Fifth Circuit has not yet applied the doctrine of continued violations to violations under the FHA. However, the crux of this case is discrimination and the Fifth Circuit has consistently applied the continued violations doctrine in other discrimination contexts. *See* Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983). Therefore, this Court will consider the application of the doctrine in this context.

Plaintiff has the burden of proof under the continued violations doctrine. *Huckabay*, 142 F.3d at 239. The plaintiff must demonstrate "an organized scheme leading to and including a present violation, such that it is the *cumulative effect of the discriminatory practice*, rather than any discrete occurrence, *that gives rise to the cause of action*." *Id.* (emphasis added). The Fifth Circuit in *Berry*, a Title VII suit, identified three important factors in finding a continued violation: (1) similar subject matter; (2) frequent violations; and (3) a minor degree of permanence. 715 F.2d at 981. Essentially, where the alleged discrimination involves similar acts or justifications, the acts occur frequently, and the acts are not so permanent as to trigger a reasonable person to assert his rights, a court is more likely to find that the defendant committed continued violations. *Id.* The Fifth Circuit in *Huckabay*, reasoned the continued violations doctrine was useful where individual acts or events may not be evident of discrimination except in cumulation over time. 142 F.3d at 238-39.

In another Title VII action, the Supreme Court distinguished "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" from a hostile work environment which would justify application of the continued violation doctrine. Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114, 115 (2002). A hostile work

environment falls within the continued violations doctrine because the discrimination does not happen on one day, but "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 116.

In an unpublished opinion concerning an ERISA action, the Fifth Circuit explained that the defendant employer's continuous refusal to allow the plaintiff to join the employee benefits plan did not constitute a continued violation. Berry v. Allstate Ins. Co., 84 Fed. Appx. 442, 444 (5th Cir. 2004) (unpublished). The statute of limitations started after the sole discrete act, the moment the defendant hired plaintiff and refused to grant the plaintiff access to the benefit plan. *Id.* at 444-45. The continued policy and enduring injury did not toll the statute of limitations. *Id.*

Similarly, Plaintiff has not established that the continued violations doctrine is applicable to this case. While Defendant maintained the same policy for years, the actions Defendant took in 2004 and then in 2006 were distinct. The two events share one of the *Berry v. Bd. of Supervisors of L.S.U.* factors; the subject matter was the same. However, the two events fail the other two factors. First, the events were separated by two years. Second, each event was sufficiently permanent to trigger a reasonable person to act to protect his rights. The two discrete acts provide separate causes of action. Although Defendant maintained the same policy, denied Plaintiff's requests for reinstatement, and then placed Plaintiff's 2006 application on pending status because of the same legal guardianship requirement, the action in 2004 was sufficiently distinct from the action in 2006. Moreover, the expiration of the 2004 voucher was sufficiently permanent to create a cause of action and put a reasonable person on notice that he could act to protect his rights.

As the Supreme Court explained in *Morgan*, the continued violations doctrine applies where actions taken by a defendant are not complete on a given day. 536 U.S. at 144. In comparison, denials of promotion or transfer are distinct actions and do not warrant the application of the doctrine. *Id.* Therefore, application of the continued violations doctrine to Defendant's separate actions denying Plaintiff housing assistance would be inconsistent with the rationale behind the doctrine. In 2004, when Plaintiff's

9

voucher expired and Defendant did not grant year-long housing assistance, Defendant committed a discrete act of discrimination based on familial status.  Although it happened again two years later, the doctrine of continue violations does not apply.  The events are simply two discrete acts, each independently actionable.  As such, the Court will not extend the starting date of the statute of limitations to 2006.

The doctrine of continued violations will not salvage Plaintiff's suit.  The complaint limited the first two causes of action to the incidents in 2004, and so those claims are time barred.  As to the third and forth causes of action, they are time barred as they relate to the expiration of the voucher but are not time barred as they relate to the cancellation of Plaintiff's application.   Plaintiff's request for declaratory and injunctive relief rests on Plaintiff's 2006 application.

## III.    Declaratory and Injunctive Relief

Plaintiff challenges Defendant's policy to require of those receiving housing assistance legal guardianship of minors living in the home, Dkt. No. 1, at 11, and requests declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.  *Id.*  Plaintiff alleges that Defendant unfairly discriminated against Plaintiff based on familial status despite having physical custody of Plaintiff's grandson, a minor, and written parental permission to have custody.  *Id.*

The Fair Housing Act as well as the Housing and Urban Development, ("HUD"), Regulations prohibit discriminatory housing practices based on familial status.  42 U.S.C. § 3604(a)-(e); 24 C.F.R. § 100.60.  Both define familial status as,

> one or more [minors] being domiciled with [(1)] [a] parent or another person having legal custody of such [minor(s)]; *or [(2)] [t]he designee of such parent or the other person having such custody, with the written permission of such parent or other person.*

42 U.S.C. § 3602(k) (emphasis added); 24 C.F.R. § 100.20 (emphasis added).  Essentially, a family must satisfy three elements to be protected against discrimination under the FHA and the HUD regulations: (1) there must be one or more minors (2) domiciled with (3) a

parent, a legal custodian,[4] the designee of a parent with written permission, or the designee of a legal custodian with written permission. Keys Youth Services, Inc. v. City of Olathe, KS, 248 F.3d 1267, 1270 (10th Cir. 2001).

Defendant argues that HUD has interpreted the FHA such that Defendant may require legal guardianship without unlawfully discriminating based on familial status. *See* Dkt. No. 24, at 5 (asserting compliance with Federal Regulation 24 C.F.R. § 100.20 *but only quoting the first part of the definition* of familial status in the regulation). However, this Court holds that HUD has not defined familial status differently than the FHA or afforded persons affected by HUD regulations less protection against discrimination. *Compare* 42 U.S.C. § 3602(k), *with* 24 C.F.R. § 100.20. Moreover, Defendant's own Administrative Plan asserts that it will not discriminate on the basis of familial status and defines familial status with language nearly identical to the FHA definition. *See* THE HOUSING AUTHORITY OF THE CITY OF BROWNSVILLE, SECTION 8 PROGRAM ADMINISTRATIVE PLAN, at 2, 138 (2003) (Familial status consists of a minor living with "[a] parent or another person having legal custody . . . *or [t]he designee of such parent* or other person having such custody, *with the written permission of such parent* or other person.") (emphasis added)

Congress did not define designee. Absent a clear definition of an ambiguous word, courts look to the common usage of the word and defer to the reasonable definition of an administrative agency that enforces the law. *See id.* at 1271-72 (addressing the application of "domiciled with" to a youth group home). Defendant, an administrative agency, essentially interpreted the FHA and the HUD regulation when making its legal guardianship requirement. Therefore, this Court must analyze whether that interpretation should be afforded deference. Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984). An agency's interpretation should remain where (1) the statute is ambiguous and Congress delegated interpretive authority to the agency; and (2) the agency's interpretation

---

[4] Neither party addressed the difference between legal guardianship and legal custody. The Court notes that the Texas Probate Code governs guardianship, and the Texas Family Code governs custody. However, the Defendant in implementing this requirement has interpreted legal guardianship to be synonymous with legal custody. Dkt. No. 26, at 4-6.

is reasonable. *Id.* at 842-43. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

Defendant satisfies the first step because the statute is ambiguous and Defendant has been delegated authority to interpret it. This suit involves the interpretation and reasonable scope of the second prong of the definition of familial status. Congress has not defined "designee" or given instruction as to the type of written permission a designee must possess to satisfy the definition. Both "designee" and "written permission" are susceptible to different interpretations.[5] A designee with written parental consent could constitute someone with simply a hand written note or someone with a notarized document giving him or her power of attorney for the minor. Therefore, this Court finds that there is ambiguity in the second prong of the familial status definition.

Moreover, Congress has stated that, "[i]t is the policy of the United States . . . to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration." 42 U.S.C. § 1437(1)(C) (West 2006). Defendant's Section 8 Housing Voucher program is part of the federal program under which HUD enters into contracts with local housing authorities to effectuate housing assistance for those in need. 42 U.S.C. § 1437f(o)(1)(A). Congress enables each local housing authority

---

[5] The Oxford English Dictionary does not define the word "designee," but defines "designate" in its fifth alternative, "[t]o appoint, set apart, select, nominate for duty or office; to destine or devote to a purpose of fate." OXFORD ENGLISH DICTIONARY (2d ed. 1989). Merriam Webster's Collegiate Dictionary defines a designee as "one who is designated," and then defines the verb, "designate," "to indicate and set apart for specific purpose, office or duty." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 313 (10th ed. 1997). Similarly, Black's Law Dictionary defines a "designee" as "[a] person who has been designated to perform some duty or carry out some specific role." BLACK'S LAW DICTIONARY 478 (8th ed. 2004).

Moreover, Black's defines "permission" offered in a writing as express permission "that is clearly and unmistakably granted [in writing]." BLACK'S LAW DICTIONARY 1176. Webster's defines "permission" in its second definition as "formal consent" and links the definition to the term "authorization." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 866. "Authorization" is defined as "the act of authorizing" or "an instrument that authorizes." *Id.* at 78.

to set the eligibility criteria for participation in the program. 42 U.S.C. § 1437f(o)(4)(C) ("To be eligible to receive assistance under this subsection, a family shall, at the time a family initially receives assistance under this subsection, be a low-income family that . . . meets eligibility criteria specified by the public housing agency."); 42 U.S.C. § 1437f(o)(6) ("Each public housing agency may establish a system for making tenant-based assistance under this subsection available on behalf of eligible families that provides preference for such assistance to eligible families having certain characteristics.").

Similarly, HUD permits local housing authorities to implement their own public housing programs according to a system of local preferences for selection of families. 24 C.F.R. § 960.206(a)(1) (West 2007). HUD regulations adopt the FHA definition of familial status. 24 C.F.R. § 100.20 ("Familial status means one or more [minors] being domiciled with (a) [a] parent or another person having legal custody of such [minor(s)]; or (b) [t]he designee of such parent or other person having custody, with the written permission of such parent or other person."). The federal statutes are ambiguous as they relate to eligibility criteria. However, Congress has delegated authority to local housing authorities to interpret the ambiguity.

Nonetheless, Defendant's construction of the second prong of the familial status definition is unreasonable and therefore should not be afforded deference. Interpretation of this provision of the FHA is an issue of first impression for the Fifth Circuit. The Seventh Circuit, in 1991, afforded designees protection against discrimination. Gorski v. Troy, 929 F.2d 1183, 1187 (7th Cir. 1991). In Gorski, the appellants were allegedly denied housing because of an application to become foster parents. Id. at 1185. Appellants argued that they fell within the protected familial status because they were designees with written permission from the legal guardian to have custody of the minor. Id. The Circuit Court relied on the plain meaning of the FHA for its ruling. Id. at 1187. The Court held that as the Illinois Department of Child and Family Services, ("DCFS"), had legal custody of children and DCFS entrusted others with the care of foster children, foster parents were designees under the FHA. Id. The appellants were designated by the legal guardian and possessed written permission to have custody of foster children, thus they could not be discriminated against based on familial status. Id.

13

However, a New York appellate court addressed the very issue before this Court. Silverstein v. Greenstein, 821 N.Y.S.2d 117, 118 (N.Y. App. Div. 2006). In *Silverstein*, the petitioners received public housing assistance and sought to include their grandchildren in their household. *Id.* at 118. The New York City Housing Authority denied petitioners' request because they did not satisfy the "Minors Rule," which required recipients of housing assistance to have legal custody of minors living with them. *Id.* In that case, HUD wrote a letter approving of the policy and the court deferred to HUD's interpretation of the statute. *Id.* Without further justification, the court held that HUD's approval was reasonable and subsequently the policy was not an irrational or unreasonable interpretation of the FHA and federal regulations defining familial status. *Id.*

Evaluating the reasonableness of statutory construction by an administrative agency, this Court must first look to the plain meaning of the statute. Conn. Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992). Where the text is unambiguous, courts must enforce the plain meaning. *Id.* Where text is ambiguous, the statute's text must be read in context of the whole provision and statute. National Ass'n of Home Builders v. Defenders of Wildlife, 127 U.S. 2518, 2534 (2007) (explaining that in a *Chevron* analysis the court should not review the relevant statutory provision in isolation). According to the canon of statutory construction, *noscitur a sociis*, an unclear word or phrase should be construed within the context of the words or phrases surrounding it. James v. U.S., 127 S. Ct. 1586, 1605 (2007). Moreover, within the contextual construction of the language, "courts should disfavor interpretations of statutes that render language superfluous." *Germain*, 503 U.S. at 253. Thus, each word or phrase should be read to have a distinct meaning. *Id.*

Essentially, this Court must evaluate the construction of "designee" and "written permission" within the context of the statute. The FHA and other federal regulations include in the definition of familial status a minor and a *designee* with *written parental consent* to have custody of the minor from the minor's parent. *See* 42 U.S.C. § 3602(k), 24 C.F.R. § 100.20, THE HOUSING AUTHORITY OF THE CITY OF BROWNSVILLE, SECTION 8 PROGRAM ADMINISTRATIVE PLAN, at 138.

14

Defendant requires that housing assistance recipients have legal, court-ordered guardianship of minors living with the recipients. *See* Dkt. No. 26, at 1-2. Defendant justified its requirement by citing to the definition in 24 C.F.R. § 100.20; however, Defendant only quoted the first part of the definition. Dkt. No. 25, at 4; Dkt. No. 26, at 2. Defendant missed the "or" that separated the two phrases and misconstrued its authority to choose which ever definition of familial status it wished to protect. Essentially, Defendant limits housing assistance to legal guardians and parents of minors, completely eliminating protection for designees. The second phrase of the definition cannot be wholly disregarded or conflated with the first phrase so that the second phrase is rendered superfluous. *See Germain*, 503 U.S. at 253. The second phrase cannot be read to be identical to the first, but must be given a distinct and separate meaning. Congress mandated protection against discrimination for families that fell within *either* part of the definition and the HUD regulations did not alter that protection.

Thus, Defendant may not discriminate based on familial status against a minor who lives with his or her parent or legal custodian. 42 U.S.C. § 3602(k); 24 C.F.R. § 100.20. And, Defendant may not discriminate based on familial status against a minor who lives with his or her parents' or legal custodian's designee with written permission. 42 U.S.C. § 3602(k); 24 C.F.R. § 100.20. Defendant may not require that all families receiving housing assistance comply with the first prong of the definition of familial status. To do so would discriminate against the families protected by the second prong. Defendant has not interpreted the second prong of the definition to have its own unique definition apart from the first prong and as such its interpretation of the second prong or its complete disregard for the second prong is unreasonable. Therefore, this Court holds that Defendant's policy is unreasonable and violates federal law. The policy of requiring all recipients living with minors to obtain legal guardianship constitutes unlawful discrimination on the basis of familial status against designees with written permission to have custody of a minor and violates the FHA and HUD regulations.

Plaintiff essentially requests that this Court declare that a designee with a document purporting to give him power of attorney for a minor living with the designee should be eligible for housing assistance, and therefore denial of housing assistance would be

unlawful discrimination based on familial status. This Court declines to reach that conclusion. Congress has established limits for the definition of designee: the designee must possess at least written permission to have custody of the child from the parent or legal custodian; however, the adult designated shall not be required to have legal custody of the minor. *See* 42 U.S.C. § 3602(k), 24 C.F.R. § 100.20. As discussed above, a designee with written parental permission could be interpreted in various ways. Congress has delegated the interpretation of "designee" to local housing authorities. This Court shall not interpret the scope of the second prong other than to state that it is different from the first prong of the definition and that its interpretation is left to local housing authorities.

## IV.    Conclusion

WHEREFORE, this Court holds that Plaintiff's discrimination and due process claims arising from incidents surrounding the 2004 voucher are time barred. This Court therefore **GRANTS in part** Defendant's Motion for Summary Judgment based on the statute of limitations, Dkt. No. 25, as to claims one and two, and partially as to claims three and four. No damage actions filed in the complaint and based on alleged discrimination survive. To the extent Plaintiff maintains due process claims arising from December 21, 2004, those claims are not time barred.

This Court further **GRANTS in part** Plaintiff declaratory and injunctive relief. The Court holds that Defendant's policy of requiring legal guardianship for minors in the housing assistance program violates federal law. Defendant is enjoined from further enforcing that requirement as part of the federal Section 8 housing assistance program.

DONE at Brownsville, Texas on January ___, 2008.

Hilda G. Tagle
United States District Judge

16